**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Lester Giles PANTER,**
**Defendant-Appellant.**

**No. 81–4447.**

United States Court of Appeals,
Fifth Circuit.

Sept. 16, 1982.

J. C. Gardner, John F. Bryan, III, Pascagoula, Miss., for defendant-appellant.

Deborah Selph Davis, Jerry A. Davis, Asst. U. S. Attys., Biloxi, Miss., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and GARZA, Circuit Judges.

CLARK, Chief Judge:

Lester Giles Panter was convicted by a jury of violating 18 U.S.C.App. § 1202(a)(1), which prohibits convicted felons from possessing firearms.[1] At trial Panter stipulated to a prior felony conviction and to the interstate commerce jurisdictional requirement. His only defense was that he possessed the firearm only momentarily and in self-defense. The district court instructed the jury, however, that neither the length of, nor the reason for, Panter's possession was relevant. Panter contends here that § 1202(a)(1) does not impose absolute liability and that the jury should have been allowed to consider his self-defense theory. We agree and reverse Panter's conviction with instructions to the district court to grant him a new trial.

The government disputes Panter's theory that he possessed the gun only momentarily

in self-defense. Evidence was adduced at trial that Panter had purchased the gun for ten or fifteen dollars and owned it for several months before the shooting incident that led to this prosecution. This proof, according to the government, makes Panter's self-defense claim irrelevant. We would agree if the evidence were uncontroverted. But Panter denies owning the gun, and, because error is alleged in the jury instructions, we must view the facts in the light most favorable to him. *See United States v. Young,* 464 F.2d 160, 164 (5th Cir. 1972). Therefore, what follows is Panter's story.

Panter was tending bar at the Roadrunner Lounge in Jackson County, Mississippi, on the evening of March 28, 1980. Bud Lins, a convicted murderer,[2] was present and had been drinking heavily. He approached Panter after a brief argument between the two and stated: "Well, you ain't done me right. I'm going to kill you." Lins forthwith set out to keep this promise. He brandished a pocketknife and stabbed Panter in the abdomen. But Panter did not succumb easily; he began to fight back. He soon found himself on the floor beneath his assailant, however, and he reached underneath the bar for a club that he knew was kept there. At this point providence intervened. Panter's hand fell not upon the intended club, but rather upon a pistol. Three shots subdued Lins, who died the next day.

Immediately after the shooting, Panter placed the pistol on the bar, where it was later found by the police. The gun belonged to an employee named Judy, who later married Panter. He never touched it either before or after the fateful encounter with Mr. Lins.

Panter was arrested for murdering Lins, but a grand jury refused to indict him.

---

1. Section 1202 provides in pertinent part:
   (a) Any person who—
   (1) has been convicted by a court of the States or any political subdivision thereof of a felony, and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this

Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

2. Lins was out on bond pending the appeal of his murder conviction to the Mississippi Supreme Court.   .

Approximately one year after the incident, Panter was charged with possession of a firearm in violation of § 1202(a)(1).

Throughout Panter's one day trial, the district court frustrated defense counsel's attempts to demonstrate that Panter's possession of the gun was in self-defense.[3] At the close of the evidence, the court charged the jury with the following instruction, which was requested by the government:

Title 18, Section 1202(a), Appendix makes it unlawful for a person who has previously been convicted of a felony to receive or possess a firearm. The statute is written in absolute terms, and the fact that possession is momentary or fleeting is immaterial. You should not consider the defendant's reasons for possession of the firearm as a defense to the offense charged in the indictment.

Inexplicably, the court subsequently charged the jury with this instruction requested by Panter:

If you find the defendant in this case, Lester Giles Panter, gained temporary control of a gun under the circumstances where he was reasonably reacting out of a reasonable fear for the life and safety of himself or others, and if you further find that the defendant did not continue to possess the gun after the emergency conditions had vanished, then you should vote to acquit the defendant.

These instructions are irreconcilable. They espouse diametrically opposing theories of the law. If the government's charge was erroneous, Panter's instruction did not cure it. Instructions must be consistent and not misleading. "[A] correct instruction does not cure the error in giving another inconsistent one." *United States v. Durham*, 512 F.2d 1281, 1286 (5th Cir.), *cert.*

*denied*, 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975). This is clearly not a case where the alleged error was so insignificant that the instructions, read as a whole, were correct. *See, e.g., Jordan v. Watkins*, 681 F.2d 1067, 1076 (5th Cir. 1982). Thus, we must assume that the jury heeded the government's instruction and ignored Panter's reason for possessing the firearm. If so, the guilty verdict was a foregone conclusion. Panter admitted possessing the gun for the short time necessary to defend himself from Lins. In fact, his sole aim at trial was to convince the jury that he possessed the gun only then and only in self-defense. But if Panter's reason for possession was irrelevant, then self-defense is no defense, and the government's instruction in effect directed a guilty verdict.

In sum, Panter testified that he possessed the gun only to defend himself from an armed, convicted killer. The district court instructed the jury to ignore Panter's claim of self-defense. Thus, we are squarely faced with a question of first impression: Is self-defense a cognizable defense in a prosecution for firearms possession under 18 U.S.C.App. § 1202(a)(1)?

On three previous occasions, we have been urged to address the question whether the existence of exigent circumstances or an emergency is a defense to a firearms possession charge. *United States v. Scales*, 599 F.2d 78 (5th Cir. 1979); *United States v. Hammons*, 566 F.2d 1301 (5th Cir.), *vacated and remanded on other grounds*, 439 U.S. 810, 99 S.Ct. 68, 58 L.Ed.2d 102 (1978); *United States v. Parker*, 566 F.2d 1304 (5th Cir.), *cert. denied*, 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 808 (1978). In each case we found it unnecessary to decide the issue because the defendant kept the gun beyond the time of the emergency that allegedly

3. For example, when counsel sought to question a government witness about Lins's propensity for violence, the government's relevancy objection was sustained, the court stating: "Go along, gentlemen. We're not trying [a] case [about] this man getting killed. We [are] trying this gun case, only the gun case, nothing else. I'm not interested the least bit in who shot who. I'm just interested in whether this fellow had this gun. That's all."

On this appeal, Panter makes separate allegations of error concerning this instance and several similar ones. Because we reverse for erroneous jury instructions, we find it unnecessary to treat these specific allegations in detail. Suffice it to say that Panter must be allowed to develop his self-defense claim fully when he is tried again.

justified his possession. Here, however, Panter claims he possessed the gun only momentarily in defending himself from Lins. Thus, the issue is ripe for our consideration.

The starting point in interpreting § 1202(a)(1) is the language of the statute itself. *See, e.g., Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980) (construing § 1202); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979); *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). It prohibits convicted felons in absolute terms from possessing firearms. There is no express exemption for possession in self-defense or for any other emergency.[4] Because § 1202(a)(1)'s terms are plain and admit of but one interpretation, this would ordinarily mark the end of our analysis. Obviously, the government relies strongly on the statute's unambiguous language in arguing that Congress intended to proscribe all possessions, no matter the reason.

But we must be mindful that "Congress in enacting criminal statutes legislates against a background of Anglo-Saxon common law . . . ." *United States v. Bailey*, 444 U.S. 394, 415 n.11, 100 S.Ct. 624, 637 n.11, 62 L.Ed.2d 575 (1980). *See also Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Part of this common law is the doctrine of self-defense. In *Bailey* the defendants interposed the common law defenses of duress and necessity in their prosecution under 18 U.S.C. § 751(a) for escape from a federal prison. The majority of the Court found the facts alleged

by the defendants insufficient to support these defenses. All members of the Court agreed, however, that both defenses would be generally available in a § 751(a) prosecution in spite of its absolute language and lack of a *mens rea* requirement.

■ *Bailey* teaches that Congress's failure to provide specifically for a common-law defense in drafting a criminal statute does not necessarily preclude a defendant charged with violating that statute from relying on such a defense.[5] This conclusion is unassailable; statutes rarely enumerate the defenses to the crimes they describe. The government's theory of absolute liability ascribes to § 1202(a)(1) an effect "more comprehensive than was contemplated and one inconsistent with our philosophy of criminal law." *Morissette v. United States*, 342 U.S. at 250, 72 S.Ct. at 243.

If the government were to carry the day here, ex-felons such as Panter, when confronted by assailants such as Lins, would find themselves between a rock and a hard place—death being the rock and a federal penitentiary the hard place.[6] Consider this example: Lins draws a gun, rather than his knife, and begins shooting at Panter. If Panter merely disarms Lins and holds him at bay he violates § 1202. We do not believe that Congress intended to make ex-felons helpless targets for assassins. The right to defend oneself from a deadly attack is fundamental. Congress did not contemplate that § 1202 would divest convicted felons of that right.

■ In sum, we reject the government's argument that the proscription of § 1202(a)(1) is absolute and admits of no

---

**4.** 18 U.S.C.App. § 1203 exempts from § 1202 liability prisoners entrusted with a firearm by competent authority and ex-felons pardoned by the President or a governor and specifically authorized to possess a firearm. No other exceptions are provided by statute.

**5.** This view is also implicit in *United States v. Agard*, 605 F.2d 665 (2d Cir. 1979), a § 1202(a)(1) firearms possession case. There the defendant objected to the district court's failure to instruct the jury on the defense of

duress and coercion. The Court of Appeals for the Second Circuit affirmed the conviction, finding the facts alleged by the defendant insufficient to take the defense to the jury. *Id.* at 668. But the court never questioned that the defense would be available on sufficient facts.

**6.** The maximum penalty for violating § 1202(a)(1) is two years imprisonment and a $10,000 fine. Panter was sentenced to prison for two years and fined $5,000.

self-defense exception.[7] We hold today that where a convicted felon, reacting out of a reasonable fear for the life or safety of himself, in the actual, physical course of a conflict that he did not provoke, takes temporary possession of a firearm for the purpose or in the course of defending himself, he is not guilty of violating § 1202(a)(1). *See United States v. Blevins,* 555 F.2d 1236 (5th Cir. 1977), *cert. denied,* 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978).

■ We emphasize that our holding protects a § 1202 defendant only for possession during the time he is endangered. Possession either before the danger or for any significant period after it remains a violation. For example, Panter's self-defense claim will not defeat a showing that he possessed the gun when there was no danger. Thus, if the jury accepts the government's version of the facts on retrial, today's decision will provide Panter only temporary solace.

■ The parties disagree about whether defense counsel filed a timely objection to the government's requested instruction. We find it unnecessary to resolve that dispute. "[T]he charge, considered as a whole [was] so clearly erroneous as to result in a likelihood of a grave miscarriage of justice." *United States v. Varkonyi,* 645 F.2d 453, 460 (5th Cir. 1981). Defense counsel's alleged failure to object to the government's charge is not fatal.

The decision of the district court is

REVERSED AND REMANDED.

---

**7.** The commentators are not altogether agreed about whether the proper label for this defense is self-defense or necessity. One theory is that self-defense is the appropriate defense to any crime committed in defending oneself. The other is that self-defense is available as a defense only to crimes against the person and that necessity is the proper label for other crimes, such as firearms possession. *Compare* J. Hall & G. Mueller, *Criminal Law and Procedure* 663 (2d Ed. 1965) *with* W. Lafave & A. Scott, *Criminal Law* 391 n.2 (1972). The facts alleged by Panter are sufficient under either rubric.