**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Thomas NOLAN,**
**Defendant-Appellant.**

**No. 82–1218.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1982.

Decided Jan. 20, 1983.

As Modified on Denial of Rehearing and Rehearing En Banc March 15, 1983.

Certiorari Denied June 13, 1983.
See 103 S.Ct. 3095.

---

Bertram Polis, Tucson, Ariz., for defendant-appellant.

John M. Roll, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before MERRILL, WRIGHT and TRASK, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Nolan attacks his convictions for federal firearms offenses. He and a co-defendant, Savage, were tried together before separate juries. One jury acquitted Savage of aiding and abetting Nolan's receipt of a firearm. The other convicted Nolan on all counts. We affirm.

FACTS

Nolan was convicted of felonies in Florida state courts in 1966 and again in 1976. Under 18 U.S.C. § 922(h), Nolan, as a convicted felon, is prohibited from receiving a firearm that has been shipped in interstate commerce. Federal law also prohibits possession of firearms by convicted felons. 18 U.S.C.App. § 1202(a)(1).

In 1980, Nolan and his girlfriend, Iris Geoghagen, moved from Florida to Arizona. She left him in April 1981. She testified at trial that he received several guns in Arizona in October and December of 1980. These were the subject of counts one, two, and three of the indictment, later consolidated into counts one and three.

On July 11, 1981, Nolan shot a man outside a Tucson bar. A Tucson police officer witnessed the shooting from a distance and arrested Nolan. State authorities charged

him with murder, and count four of the indictment charged him with receiving the gun used in the shooting. This was the same gun he was charged with receiving in count three.

On August 25, 1981, after Nolan had procured bail on the murder charges, federal authorities arrested him at his home for receiving firearms. There they found three more guns in plain view in the living room. Counts five, six, and seven of the indictment charged Nolan with possessing these guns in violation of 18 U.S.C.App. § 1202(a)(1). The trial court, applying the rule of lenity used in criminal cases, consolidated these three counts into count five.

Because of publicity surrounding Nolan and the July 11 shooting, the court took numerous steps to control prejudice at trial. It moved proceedings from Tucson to Phoenix, and restricted the government in its proof on count four, the count relating to the shooting. The court excluded also any references to Nolan's motorcycle gang connections and evidence derived from taps of his phone. Finally, the court allowed Nolan to stipulate to his felony conviction to avoid proof of the details of his Florida offenses at trial.

The court granted several continuances, including one requested by Nolan in order to await the outcome of the state murder trial. After that trial was postponed several times, the court proceeded with the trial of the firearms offenses, despite Nolan's requests for additional continuances. The court also refused his requests to sever count four or to present evidence of self-defense on that count.

The jury convicted Nolan on the four counts remaining after consolidation. He challenges court rulings and the sufficiency of the evidence against him.

## I. *Failure to sever or continue*

Nolan contends first that the court erred when it failed either to grant a continuance or to sever count four.

### A. *Continuance*

We review the refusal to continue the case for abuse of discretion. *See, e.g., United States v. Regner,* 677 F.2d 754, 757 (9th Cir.1982). There was none here.

Trial was originally scheduled for November 2, 1981. The court granted one continuance at Nolan's request to allow him to prepare additional evidence, and another to await the completion of the related state murder trial, originally scheduled for January 21, 1982. The court reset the trial date two more times until, on February 22, it refused to grant additional continuances. The trial went ahead on March 2, 1982. The state trial, scheduled for January, was delayed repeatedly and finally began in June, 1982.

▮ The district court made every effort to accommodate Nolan until it became apparent that the state trial would not timely proceed. In view of those efforts, we cannot say the court abused its discretion when it refused an additional continuance. We do not expect a district judge to put himself at the mercy of state proceedings whenever there is a somewhat related case in state court.

### B. *Severance*

▮ Nolan contends the court should have severed count four when it decided not to await the outcome of the state trial. To test such a claim we decide whether joinder was "so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." *United States v. Armstrong,* 621 F.2d 951, 954 (9th Cir. 1980). Joinder remains the rule rather than the exception in criminal cases.

In arguing that the court abused its discretion in declining to sever, Nolan relies on *United States v. Bronco,* 597 F.2d 1300 (9th Cir.1979). In *Bronco,* the government joined a charge of a large counterfeiting conspiracy with charges that Bronco passed several counterfeit bills. We concluded that severance was warranted because the conspiracy charge allowed the government

to introduce highly prejudicial evidence and because there was little overlapping proof between the conspiracy and counterfeiting charges. *Id.* at 1303.

■ Here, the overlap in proof was significant. Ronald Crieger and Iris Geoghagen testified to the interstate movement of the guns involved in counts three and four. Ms. Geoghagen also testified on count one. Although there was no significant overlapping proof between count five and the other counts, Nolan does not suggest that count five should have been severed. Joinder was logical and promoted judicial economy.

We consider next Nolan's claims of prejudice. Nolan asserts he had vital testimony to give relating to counts one, three, and five, but he could not testify on count four because his testimony could be used against him in the state murder trial. He argues that the failure to sever violated his Fifth Amendment "right to testify."

■ If a defendant seeks severance because he wishes to testify on some counts and not others, he must show that he has important testimony to give on some counts and a strong need to refrain from testifying on those he wants severed. *Armstrong,* 621 F.2d at 954. Nolan stated he would give exculpatory testimony on all counts, including count four. He wished to refrain from testifying on that count only because of the possible use of his testimony in the subsequent state prosecution.

Although Nolan argues that his Fifth Amendment right was violated, the government never forced him to testify or in any way attempted to coerce his exercise of Fifth Amendment rights. Every time a defendant decides whether to testify, he must weigh the possibility that the testimony he gives may later be used against him. *Harrison v. United States,* 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968).

In effect, Nolan asks this court to allow him to choose his strategic weapons without regard to the needs of the judicial system. His desire to preserve his options does not meet the *Armstrong* standard of a "strong need to refrain from testifying." Joinder was proper.

## II. *Prior Incarceration*

■ Before trial, Nolan stipulated that he had been convicted of a crime "punishable by a term of imprisonment in excess of one year." This made it unnecessary to prove that he was a convicted felon, an element of the crimes with which he was charged under 18 U.S.C. § 922(h) and 18 U.S.C. (App.) § 1202(a)(1).

During the testimony of Iris Geoghagen, the government and the court questioned her regarding Nolan's prison term. Nolan contends this questioning violated the stipulation and produced irrelevant prejudicial evidence which destroyed the fairness of the trial. The government contends that the questioning was necessary to prove that co-defendant Savage, who was tried for aiding and abetting Nolan's receipt of a firearm, knew Nolan had been incarcerated.

The record shows that the court carefully limited questioning of Ms. Geoghagen to issues relating to Savage's knowledge of Nolan's incarceration. The court explored no details of the offenses and revealed no prejudicial details concerning Nolan's record. Regarding Nolan, the jury merely heard repeated what it already knew: that he had been convicted of a crime punishable by imprisonment for longer than a year.

The record shows also that the government warned before trial that the stipulation did not relieve it of the burden of proving Savage's knowledge of Nolan's felony record. The questioning neither caught the defense by surprise nor was it irrelevant. It concerned an element of the government's case against Savage. The court properly allowed the prosecution to pursue this line of questioning of Ms. Geoghagen.

## III. *Self Defense under 18 U.S.C. § 922(h)*

### A. *Exclusion of the Defense*

Nolan argues that he was entitled to present evidence of self defense to charges that he received a weapon during the July 11 shooting. The trial court ruled that self

defense was not a defense to charges under 18 U.S.C. § 922(h) and that, even were it a defense, Nolan had not pleaded facts sufficient to raise it.

▮ Until recently, no federal court had allowed a self defense claim to charges of receipt or possession of firearms. Defendants have labeled the defense duress, coercion, necessity, or self defense.[1] Regardless of the label, the courts have ruled that federal firearms laws impose something approaching absolute liability. *United States v. Hammons*, 566 F.2d 1301, 1303 (5th Cir.), *vacated and remanded on other grounds*, 439 U.S. 810, 99 S.Ct. 68, 58 L.Ed.2d 102 (1978).

Rather than rule self defense is *never* available, courts have generally ruled that the defendant has not pleaded facts sufficient to raise the defense. *E.g., United States v. Agard*, 605 F.2d 665 (18 U.S.C. App. § 1202(a)(1)) (no defense of duress or coercion for defendant who initiated confrontation); *United States v. Scales*, 599 F.2d 78 (5th Cir.1979) (18 U.S.C. § 922(h)) (purchase of gun for defense of wife not a defense); *United States v. Parker*, 566 F.2d 1304 (5th Cir.), *cert. denied*, 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 808 (1978) (26 U.S.C. § 5861(d)) (defendant held gun too long to claim self defense to charges of possession of unregistered weapon). *Cf. United States v. Wood*, 566 F.2d 1108 (9th Cir.1978) (defendant did not plead impossibility of escape before carrying knife within prison).

The Fifth Circuit has ruled that a claim of self defense is available under 18 U.S.C. (App.) § 1202(a)(1). *United States v. Panter*, 688 F.2d 268 (5th Cir.1982). The *Panter* court stated that in the absence of a legislated exclusion of self defense, the common law defense of self defense must be available. *Id.* at 271.

We suspect that the unusual facts of the *Panter* case will not soon be repeated. There, Panter's assailant threatened Panter, stabbed him in the abdomen, and had Panter underneath him on the floor before Panter's hand fell fortuitously on a pistol. In this rarest of situations, the Fifth Circuit allowed Panter to plead self defense to charges of possessing a firearm as a convicted felon.

Nolan has not pleaded such circumstances here, and we consider *Panter sui generis*. In requesting that Nolan be allowed to show self defense, Nolan's attorney avowed the facts he would prove. Both this avowal and the government's offer of counter-proof showed that, after a confrontation in the bar, Nolan followed the victim of the shooting outside.

▮ A defendant may not plead duress or coercion unless he has "no reasonable opportunity to escape." *Wood*, 566 F.2d at 1109. Nor is the defense available to one who has recklessly placed himself in a dangerous situation. *Agard*, 605 F.2d at 667; Model Penal Code § 2.09(2) (Tent.Draft No. 10, 1960).

▮ To plead necessity, a defendant must show he is acting to prevent "an imminent harm which no available options could similarly prevent." *United States v. May*, 622 F.2d 1000, 1008 (9th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980). Similarly, self defense is not available to one who renews a confrontation which has ended. W. Lafave & A. Scott, *Handbook on Criminal Law*, pp. 394–95 (1972).

▮ However we characterize Nolan's defense, he did not plead facts sufficient to raise the issue. He prolonged and renewed the confrontation when he pursued the vic-

1. Necessity is the defense one pleads when circumstances force one to perform a criminal act. Duress, or coercion, applies when human beings force one to act. W. Lafave and A. Scott, *Handbook on Criminal Law*, pp. 374–377, 374 n. 1, and 381 (1972). Lafave and Scott suggest that self defense is appropriate only for crimes committed against the person in defending oneself.

Necessity applies to other crimes committed in defending oneself, such as possession of firearms. *Id.* at 391, n. 2; *United States v. Panter*, 688 F.2d 268, 272 n. 7 (5th Cir.1982). *See, also* Model Penal Code § 3.04(2)(b)(i). The differences between the defenses are not important in this case.

tim. The court correctly excluded all evidence of self defense.

### B. *Prejudice from Exclusion of Self Defense*

Nolan argues that the admission of details about the shooting required the court to allow evidence of self defense. He asserts that the court should have granted a mistrial.

Before trial, the court ordered the government to limit evidence relating to the July 11 shooting. The court specifically warned the government to instruct its witnesses to omit any reference to events of July 11 that might be prejudicial.

Despite these warnings, one officer testifying for the government stated that someone had been shot and that there had been "victims" of the shooting. Although the court issued prompt curative instructions, Nolan argues that the testimony tainted the entire trial. Absent any evidence of self defense, the jury was left with knowledge of a shooting, Nolan's possession of a gun, and victims of the crime.

Before concluding that Nolan suffered prejudice, we must consider the court's curative instructions.

■ We assume that juries follow admonitions and curative instructions. *United States v. Johnson,* 618 F.2d 60, 62 (9th Cir.1980). As we indicated in *Johnson,* we weigh the force and delivery of the instruction against the prejudice generated by the evidence. To determine the prejudice, we compare the probative force of the inadmissible evidence with that of the admissible evidence that supports the verdict. The trial judge's determination of the prejudicial impact of evidence must be accorded deference. *United States v. Sanford,* 673 F.2d 1070, 1073 (9th Cir.1982).

■ The court cautioned the prosecutor twice during the officer's testimony and twice told the jury to disregard mention of any details of the shooting. The court reiterated the presumption of innocence in Nolan's favor, and reminded the jury that they were concerned only with possession or receipt of firearms charges. The court then delivered curative instructions forcefully and did what it could to limit the prejudicial effect of the officer's testimony.

We next consider the prejudicial impact of the officer's statements. Although the news that Nolan shot someone created a likelihood of prejudice, the officer indicated also that Nolan may have shot in self defense. The proof against Nolan on this count was overwhelming. We have little question that the jury would have convicted him regardless of any mention of victims of a shooting.

Given the court's forceful instructions and the weight of the evidence against Nolan, we conclude the court correctly declined to grant a mistrial.

### IV. *Other Claims*

Nolan offers two other grounds for overturning the court's decision. He argues that there was insufficient evidence to convict him of possession on count five. He contends also that the trial court prejudiced him on count five by its answer to a jury request for the content of testimony.

In reviewing a claim that the evidence was insufficient to support the verdict, we consider the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We must sustain the judgment if there is substantial evidence to support it. *Id.; United States v. Beecroft,* 608 F.2d 753, 756 (9th Cir.1979).

■ Possession need only be constructive to support a conviction under 18 U.S.C.App. § 1202(a)(1). *United States v. Flores,* 679 F.2d 173, 177 (9th Cir.1982). Here, the government's evidence showed that Nolan was sitting in the room with the guns in plain view on a table. He avoided putting his name on the lease at the house where the guns were found, but he was the most permanent of its residents. The evidence showed also that he made efforts to keep guns close to him at all times.

Nolan was close enough to reduce the guns to actual possession if the need arose.

486

*See United States v. Donofrio,* 450 F.2d 1054, 1056 (5th Cir.1972). In these circumstances, the evidence was sufficient to support his conviction.

Finally, Nolan contends that the trial court erred in its answer to a jury request for the rereading of testimony. During deliberations, the jury asked the court whether a witness testified that he sold a gun to Nolan or to Savage. The court responded that the question was a "factual determination for the jury to make." The record shows that the witness testified he sold the gun to Savage.

■■■■ Nolan contends that the trial court abused its discretion by answering that there was a factual determination to make. A trial court is given great latitude in deciding whether to reread testimony requested by the jury. In general, rereading is disfavored because of the emphasis it places on specific testimony and the delay it causes in the trial. *United States v. De Palma,* 414 F.2d 394, 396 (9th Cir.1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970).

■■■■ The court might have more appropriately told the jury to rely on its memory. *See United States v. Pimental,* 645 F.2d 85 (1st Cir.1981). Nevertheless, we see no error in the court's answer. It merely refused to have the testimony reread, and in this decision it enjoys a great deal of discretion. *United States v. King,* 552 F.2d 833, 850 (9th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). We cannot say the court abused its discretion.

The judgment of conviction is affirmed on all counts.