**UNITED STATES of America, Appellee,**

v.

**Jerry L. SLAVENS, Appellant.**

**No. 84–1287.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1984.

Decided Oct. 24, 1984.

Loren R. Honecker, Springfield, Mo., for appellant.

David C. Jones, Springfield, Mo., for appellee.

Before HEANEY, ROSS and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

On January 11, 1984, Jerry Lee Slavens, a Springfield, Missouri, City Councilman, was indicted by a federal grand jury and charged with extortion under 18 U.S.C. § 1951, and obstruction of justice under 18 U.S.C. § 1503. After a four day trial, Slavens was acquitted by a jury on the extortion count, but convicted on the obstruction

of justice count. Slavens appeals his conviction to this Court under 28 U.S.C. § 1291.

Slavens was convicted largely on the testimony of Howard Atwood. Atwood owns and operates an automobile salvage yard in Springfield. In January, 1983, the City of Springfield filed a complaint against Atwood's salvage yard, alleging a violation of the city's zoning ordinances. Atwood contacted Slavens, his City Councilman, for help in resolving the complaint. Slavens arranged for Atwood to continue operation of the salvage yard under an exception to the zoning ordinances.

According to Atwood's testimony, Slavens contacted him after the exception had been arranged and told him that the city would continue to harass him, despite the exception, unless his property was rezoned. Slavens told Atwood that he could get the property rezoned for a fee. When Slavens was unwilling to name a specific figure, Atwood suggested the amount of $10,000, which Slavens accepted. After Atwood paid Slavens $1900 cash in "up-front" money, Slavens introduced legislation which resulted in the rezoning of Atwood's property. Atwood then paid the balance of the $10,000 in cash.

On November 1, 1983, FBI and IRS agents interviewed Atwood. Atwood told the agents he had paid Slavens to have his property rezoned. At the request of the agents, Atwood met with Slavens on November 2 at Slavens' home and secretly tape-recorded their conversation. During the course of the conversation, Atwood informed Slavens that Atwood had been subpoenaed to testify in front of a federal grand jury. Slavens advised Atwood to tell the grand jury that he had never given Slavens any money. Atwood turned the tape recording over to the agents.

Later that day, apparently concerned that some of the money he had received might be traced back to Atwood, Slavens visited Atwood at the salvage yard and told him to testify that the original $1900 payment was a loan to Slavens for the purchase of a car. Atwood told the agents of this conversation and stated that he had never loaned Slavens any money for any purpose whatsoever. Atwood subsequently testified against Slavens before the grand jury and at Slavens' trial.

Slavens raises two issues on appeal. First, he claims that he was prejudiced by the inconsistency of two of the instructions read to the jury. Second, he claims that there was insufficient evidence to sustain a conviction on the obstruction of justice count. We will consider each contention in turn.

## I. Conflicting Jury Instructions

The District Court[1] instructed the jury in accordance with both the Government's Requested Instruction No. 19 and the Defendant's Requested Instruction No. 14. Requested Instruction No. 19 states that:

A separate crime or offense is charged in each count of the indictment. Each offense, and the evidence pertaining to it, should be considered separately. The fact that you may find the accused guilty or not guilty of one of the offenses charged should not control your verdict as to any other offenses charged.[2]

Designated Record (D.R.) at 36. Requested Instruction No. 14 reads:

Unless you find beyond a reasonable doubt that Defendant knowingly accepted payment of money from Howard Atwood in exchange for his performance or nonperformance of his public duty, you may not convict Defendant of the offense of obstruction of justice as charged in Count II of the Indictment.

An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or other innocent cause.

---

1. The Honorable William R. Collinson, Senior United States District Judge for the Western District of Missouri.

2. The purpose of the Government's instruction is quite obviously to indicate to the jury that the question of guilt or innocence must be decided independently for each count charged.

The purpose of adding the word "knowingly" is to insure that no one will be convicted for an act done because of mistake, or accident, or other innocent reason.[3]

*Id.* at 34.

The inconsistency in the instructions, according to Slavens, is that while the Government's instruction tells the jury to consider each count separately, defendant's instruction has the effect of making a verdict of guilty on the extortion count a necessary prerequisite to a verdict of guilty on the obstruction of justice count. Slavens contends that since the jury acquitted him of the extortion count, it could not have found that he knowingly accepted money from Atwood, a finding which was necessary to convict Slavens on the obstruction of justice count. Slavens argues that the jury, confused by the conflicting instructions, nevertheless convicted him on the obstruction of justice count.

Slavens relies primarily on *United States v. Panter*, 688 F.2d 268 (5th Cir.1982), *Perez v. United States*, 297 F.2d 12 (5th Cir. 1961), and *United States v. Pope*, 561 F.2d 663 (6th Cir.1977) to support his proposition that the conflicting jury instructions must invalidate the verdict. In *Panter*, however, the conflict in the instructions meant that the instructions, when read as a whole, did not fairly instruct the jury, 688 F.2d at 272, while *Perez* involved the failure of the trial court to give an instruction specifically requested by the defendant. 297 F.2d at 12. *Pope* simply involved reversible error based on instructions that failed to include intent as an essential element of the offense with which defendant was charged. 561 F.2d at 663. Here the instructions that

Slavens requested were given and he does not contend that either of the two instructions was incorrect as a matter of law. Rather, he argues that under these instructions his acquittal on the extortion count requires his acquittal on the obstruction of justice count as well.

■ We find Slavens' argument to be without merit. Slavens' contention that the jury acquittal on the extortion count necessarily implies a finding that Slavens did not knowingly accept money from Atwood for an unlawful purpose is true only if Slavens could not knowingly have so accepted money without having thereby committed extortion. Based on the evidence and instructions in this case, however, the jury could have found that Slavens knowingly accepted a bribe from Atwood without having extorted it within the meaning of 18 U.S.C. § 1951. The District Court instructed the jury that extortion under color of official right requires that the public official be the initiator or inducer of the unlawful payment.[4] Since Atwood testified that he suggested the figure of $10,000 in response to Slavens' overtures for money, the jury could have been unsure that Slavens was the initiator or inducer of the transaction, while believing beyond a reasonable doubt that Slavens knowingly accepted the money in exchange for the performance of his public duty. We fail to see any inconsistency in the instructions or any inconsistency in the verdicts reached by the jury, nor do we find any reason to believe that the jury was confused by the instructions.

## II. Sufficiency of the Evidence

■ The conclusion we have reached in Part I of this opinion disposes of most of

---

**3.** The apparent purpose of defendant's instruction is to indicate to the jury that Slavens, by telling Atwood to say that he had not given Slavens any money, was not obstructing justice by inducing Atwood to testify falsely in front of the grand jury unless Slavens had, in fact, accepted money from Atwood in exchange for Slavens' use of his public office on Atwood's behalf.

**4.** We do not hold in this case that the public official must be the sole inducer or initiator of a pay-off in order to make out an offense under

18 U.S.C. § 1951. *See United States v. Brown*, 540 F.2d 364, 372 (8th Cir.1976); *United States v. Braasch*, 505 F.2d 139, 151–52 (7th Cir.1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975). The instruction in this case that the public official be the inducer of the payment may have been "more favorable to the defense than was strictly necessary." *See United States v. Hathaway*, 534 F.2d 386, 394 (1st Cir.), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976).

Slavens' contentions regarding the asserted insufficiency of the evidence to sustain his conviction on the obstruction of justice count. Slavens argues that his acquittal by the jury on the extortion count necessarily implies a finding that he had not knowingly accepted Atwood's money in return for his performance of a public duty. Slavens then contends that his statements to Atwood to tell the grand jury that Atwood had not given him any money were either true, or if technically false (in light of his testimony that Atwood had given him money for an automobile loan), not materially false. Since we have held in Part I of this opinion that the jury's verdict of guilty on the obstruction of justice count is not inconsistent with its verdict of acquittal on the extortion count, the only remaining question is whether, viewed in the light most favorable to the government, there is substantial evidence of Slavens' guilt to support the jury's verdict. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir.), *cert. denied*, 419 U.S. 853 & 878, 95 S.Ct. 96 & 142, 42 L.Ed.2d 85 (1974).

Atwood testified at trial that in early June of 1983, he met with Slavens and offered him $10,000 to have Atwood's salvage yard rezoned. One day after this meeting, Atwood paid Slavens $1900 in cash, Slavens having told him that some "up front" money would be necessary. On June 10, Slavens introduced legislation to rezone Atwood's property. On June 11, Slavens deposited $600 into a personal account. On August 8, Atwood's property was rezoned. On August 9, Atwood paid Slavens the remainder of the $10,000 in cash. The same day, Slavens deposited $1000 in cash into his wife's bank account and $1000 in cash into his own account. On August 17, Slavens again deposited $1000 in cash into his wife's account and $2000 in cash into his own account.

On November 2, Atwood met with Slavens and tape-recorded their conversation. This recording was played to the jury. We have reviewed a transcript of the conversation, which the parties have stipulated to be accurate. During the course of the conversation, Slavens repeatedly urged Atwood to tell the grand jury that he had never given Slavens any money for the rezoning:

> Well HOWARD, all you gotta do is the same thing I would do, is, you know, if they're askin' questions like did you pay anybody off or anything just say no, and I'll do the same thing, 'cause nobody knows but me and you. D.R. at 42;

> Well, (stutters) if you tell 'em or I tell 'em either one, both our asses are in trouble. D.R. at 42;

> But see nobody can prove, they can accuse us of any damn thing, but they can't prove nothin'. All we have to do is deny it. D.R. at 43;

> There's only two people that knows anything about that and that's me and you. So, you know, if they call me in there, you didn't give me a dime, all right? D.R. at 44;

> Well HOWARD, if they ask you if you gave anybody any money or anything like that on that zoning, just say no. D.R. at 45;

> But between that deal, the only one that knows about that is me and you, and as long as me and you don't say nothin', D.R. at 48;

> Um hum. HOWARD, just, if they ask you if you gave me anything at all, just deny it. D.R. at 49.

Slavens had the opportunity at trial to persuade the jury that the only money he received from Atwood was for an automobile loan and that the statements he made to Atwood during their November 2, 1983 conversation were made with the intention of urging Atwood to testify truthfully. The jury found that Slavens had urged Atwood to testify falsely before the grand jury. There was substantial evidence before the jury to support its finding.

There being no merit in any of Slavens' arguments for reversal, we affirm his conviction.