# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 17-11301

——————

United States Court of Appeals
Fifth Circuit

**FILED**
June 19, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

MICHAEL ANGELO ORTIZ,

     Defendant - Appellant

—————————————

Appeal from the United States District Court
for the Northern District of Texas

—————————————

Before OWEN, SOUTHWICK, and HIGGINSON, Circuit Judges.
STEPHEN A. HIGGINSON, Circuit Judge:

Michael Angelo Ortiz pleaded guilty to possessing a firearm and ammunition as a convicted felon. On appeal, he argues that the factual basis supporting his plea was insufficient. We disagree. The factual basis demonstrated that Ortiz's conduct satisfied all elements of the offense. Accordingly, we affirm the district court's acceptance of his guilty plea.

## I.    Proceedings

In June 2017, a grand jury indicted Michael Angelo Ortiz on one count: possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment charged:

No. 17-11301

On or about February 19, 2017, in the Lubbock Division of the Northern District of Texas, and elsewhere, Michael Angelo Ortiz, defendant, a person who had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm and ammunition in and affecting interstate and foreign commerce, to wit: a Smith & Wesson, .40 caliber pistol, serial number PAK 7828, with ammunition.

Pursuant to a plea agreement, Ortiz pleaded guilty to the indictment and waived his right to appeal. Ortiz made no objections to the stipulated facts attached to the plea (the "Factual Resume") and never raised any affirmative defense. A presentence report ("PSR") was prepared.

The district court sentenced Ortiz to 90 months of imprisonment. The sentence fell within the applicable Guidelines range of 84 to 105 months and was followed by a three-year term of supervised release.

On appeal, the Federal Public Defender moved for leave to withdraw and filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967). Ortiz filed a response asserting, in relevant part, that he had acted in self-defense. This court ordered that the motion to withdraw be carried with the case because Ortiz's counsel had failed to discuss "whether a colorable defense of justification was presented." Thereafter, Ortiz's counsel withdrew the *Anders* motion and filed a short brief on the merits, arguing that the district court plainly erred in accepting a guilty plea that contained an insufficient factual basis. At no point in the course of these proceedings did Ortiz move to withdraw his guilty plea.

## II.    Factual Background

Because the precise content of the record is central to this case, we take care to present, in detail, what was recited in the Factual Resume and in the PSR.

No. 17-11301

The Factual Resume reads as follows:

1.     Michael Angelo Ortiz admits and agrees that starting on or about February 19, 2017, in the Lubbock Division of the Northern District of Texas, and elsewhere, Michael Angelo Ortiz, defendant, a person who had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm and ammunition in or affecting interstate or foreign commerce, to wit: a Smith & Wesson, .40 caliber pistol, serial number PAK7828, several rounds of ammunition, in violation of Title 18, United States Code, Sections 922(g)(l) and 924(a)(2).

2.     On February 19, 2017, Ortiz was involved in an altercation with an individual in Lubbock, Texas, a city within the Northern District of Texas. Prior to altercation, Ortiz had been notified by this individual that he was waiting outside Ortiz's apartment complex in order to speak with him. During the course of their conversation, Ortiz pulled out a pack of cigarettes and offered the individual a cigarette from a package where Ortiz was also storing some money. Seeing Ortiz's money, the individual attempted to grab the pack of cigarettes away from Ortiz and the altercation ensued. During the altercation, the individual threatened Ortiz with the Smith & Wesson, bearing Serial Number PAK7828. Ortiz in response grabbed the Smith & Wesson. As the individual and Ortiz fought over the gun, the gun discharged and shots were fired into the roof of the vehicle. Once the shots had been fired, Ortiz broke away and ran. After the altercation, Ortiz barricaded himself inside a nearby apartment, where Ortiz, his girlfriend, and his small children resided. After several hours, Ortiz voluntarily exited the apartment and surrendered to law enforcement.

3.     Law enforcement recovered the firearm from a trash bin near the apartment where Ortiz and his family resided. Ortiz's jacket was located on the ground next to the trash bin where the gun was found. Ortiz admits that he possessed the Smith & Wesson on February 19, 2017, in Lubbock, Texas.

4.     [An ATF Special Agent] inspected the seized firearm and determined that the firearm had been manufactured outside the state of Texas. Because the firearm was manufactured outside the state of Texas, the firearm traveled in interstate commerce; that

3

No. 17-11301

is, the firearm had traveled at some point from one state to another or between any part of the United States and any other country.

5.    Ortiz admits that prior to the knowing possession of the firearm, he had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year.

6.    The defendant agrees that the defendant committed all the essential elements of the offense. This factual résumé is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the indictment.

The PSR tells the story from a slightly different perspective, as follows:

A [law enforcement] officer heard several gun shots. He then witnessed Ortiz running, with his jacket in his hand, as if he was concealing something inside the jacket. The officer then saw the defendant go near a trash bin where a gun was later recovered.
. . .
Ortiz ran into Apartment No. 2813 and barricaded himself inside.
. . .
Once police arrived, including SWAT team members, the defendant refused to obey police commands and leave the apartment. As a result, a police standoff ensued, which lasted more than 1 hour.
. . .
Eventually, after officers instructed the defendant to leave the apartment over the police public address system, Ortiz surrendered and exited the apartment while carrying one of his infant children. The defendant was arrested without incident.
. . .
Ortiz was later interviewed by officers. He advised officers that he was supposed to meet two people and go to a cemetery. So, he met these people outside at their vehicle. While talking with them, he removed a package of cigarettes, which the driver attempted to get from the defendant. Shots were fired. Ortiz ran back into his apartment out of fear. When interviewing officers confronted him about his story contradicting other witness statements, the defendant advised he was meeting a new narcotics contact, when

4

the driver pulled a firearm on the defendant. A struggle ensued over the firearms, and shots were fired into the vehicle. He then ran back to his apartment and discarded the gun in some bushes on the way to his apartment.

. . .

The firearm, a Smith & Wesson[,] . . . was recovered by police from a trash bin near the defendant's apartment . . . On the ground next to this trash can, officers found Ortiz's jacket, which had also been discarded.

. . .

Ortiz was arrested . . . at his mother's [residence]. A subsequent search of the residence revealed 17.87 grams of methamphetamine and a loaded [Glock pistol]. The firearm was located under a bedroom mattress. . . . Ortiz advised he had received the Glock from a friend, and another friend was going to purchase the Glock for $1,000.

## III.    Standard of Review

Absent a defendant's objection in district court, this court reviews the factual basis of a guilty plea for plain error. *United States v. Trejo*, 610 F.3d 308, 313 (5th Cir. 2010).

On plain-error review, a defendant "must first establish an error." *United States v. Ayelotan*, 917 F.3d 394, 400 (5th Cir. 2019). Second, the defendant must show that the error is clear or obvious. *Id.* Third, the defendant must prove that the error affected the defendant's substantial rights. *Id.* "To satisfy this third condition, the defendant ordinarily must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (internal quotation omitted). "Once those three conditions have been met, 'the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 1905 (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)).

No. 17-11301

## IV. Discussion

Ortiz argues that the factual basis for his plea does not support his conviction. We begin by addressing two threshold matters: first, which parts of the record we should consult for factual information and second, whether Ortiz's appeal waiver forecloses his right to challenge the sufficiency of his guilty plea.

### A. Relevant Sources of Information

The Advisory Committee's Notes to Federal Rule of Criminal Procedure 11 make clear that a district court may use sources other than the defendant's admissions to confirm that a factual basis exists to support those admissions. *See* Fed. R. Crim. P. 11 advisory committee's note to 1966 amendments ("The court should satisfy itself, by inquiry of the defendant or the attorney for the government, *or* by examining the presentence report, or otherwise, that the conduct which the defendant admits constitutes the offense charged in the indictment . . . ."); *see also McCarthy v. United States*, 394 U.S. 459, 463 n.6 (1969) (acknowledging that "the Advisory Committee suggests three methods of determining that a factual basis exists for a guilty plea"); *Sassoon v. United States*, 561 F.2d 1154, 1159 (5th Cir. 1977) (noting that "the Advisory Committee's Notes accompanying Rule 11 list several means of satisfying the factual basis").

In *Trejo*, this court confirmed that the same scope of sources may be considered by the appellate reviewer: "In assessing factual sufficiency under the plain error standard, we may look beyond those facts admitted by the defendant during the plea colloquy and scan the entire record for facts supporting his conviction." 610 F.3d at 313 (citing *United States v. Tullos*, 356 F. App'x 727, 727–28 (5th Cir. 2009)); *see also Tullos*, 356 F. App'x at 728 (holding that "[t]he plea colloquy, the PSR findings, and the district court's

6

statements at sentencing sufficiently support the determination that [the defendant's] conduct met all of the elements of the [offense]").

Accordingly, we consider the entire record in assessing the sufficiency of the factual basis.

### B. Appeal Waiver

The government presses Ortiz's appeal waiver. But our court has repeatedly held that "even if there is an unconditional plea of guilty or a waiver of appeal provision in a plea agreement, this Court has the power to review if the factual basis for the plea fails to establish an element of the offense which the defendant pled guilty to appeal waivers in that context." *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002); *see also United States v. Alvarado-Casas*, 715 F.3d 945, 951 (5th Cir. 2013) (noting that the defendant could "challenge the factual basis underlying his guilty plea notwithstanding his unconditional appeal waiver"). Accordingly, we proceed to the merits.

### C. Ortiz's Argument

Ortiz argues that the factual basis does not support his conviction. But he fails to specify whether he means that the factual basis (1) does not establish the elements of the offense, or (2) establishes the elements of the offense but also establishes an affirmative justification defense. That distinction decides his case. While only the former supports reversal, Ortiz arguably shows only the latter.

We first explore the relationship between offense elements and affirmative defenses generally.

### D. Elements and Affirmative Defenses

Hornbook criminal law distinguishes between offense elements and affirmative defenses. *See* Paul H. Robinson, *Criminal Law Defenses: A Systematic Analysis*, 82 Colum. L. Rev. 199, 291 n.164 (1982) ("The distinction

between offenses and defenses is perhaps the most basic distinction in criminal law that lawyers . . . recognize."). The distinction has constitutional significance; while "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged[,] . . . [p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Patterson v. New York*, 432 U.S. 197, 210 (1977); *see also Smith v. United States*, 568 U.S. 106, 110 (2013) ("Where [an affirmative defense] 'excuse[s] conduct that would otherwise be punishable,' but 'does not controvert any of the elements of the offense itself,' the Government has no constitutional duty to overcome the defense beyond a reasonable doubt.") (quoting *Dixon v. United States*, 548 U.S. 1, 6 (2006)).

As *Patterson* and *Smith* reflect, the offense-defense distinction is complicated when a defense "controvert[s]" an offense element. *Smith*, 568 U.S. at 110 (citing *Dixon*, 548 U.S. at 6); *see also id.* ("The State is foreclosed from shifting the burden of proof to the defendant only 'when an affirmative defense . . . negate[s] an element of the crime.'") (quoting *Martin v. Ohio*, 480 U.S. 228, 237 (1987) (Powell, J., dissenting)). Justification defenses such as duress and necessity are not, typically, element-negating. *See Dixon*, 548 U.S. at 6 ("The duress defense, like the defense of necessity . . . may excuse conduct that would otherwise be punishable, but the existence of duress normally does not controvert any of the elements of the offense itself.").

With that framework in mind, we first examine whether the factual basis in this case establishes the elements of the offense. Then we assess whether it might provide for an affirmative defense that negates an offense element. Finally, we explore the implications of those results on whether the factual basis was sufficient to support conviction.

No. 17-11301

**E. Offense Elements and the Justification Defense in This Case**

The elements of the offense are as follows:

(1) that the defendant knowingly possessed a firearm, as charged in the indictment;

(2) that before the defendant possessed that firearm, the defendant had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year; and

(3) that the firearm possessed traveled in and affected interstate commerce.

*See* 18 U.S.C. §§ 922(g)(1) and 924(a)(2); *see also* Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.43D (2015). Ortiz has conceded or waived his challenge to the second and third elements.[1] He focuses only on the first element—knowing possession.

Ortiz hints that the brevity of his possession rendered it short of what is required under the first element. The caselaw is against him. *See United States v. Parker*, 566 F.2d 1304, 1306 (5th Cir. 1978) ("That possession is momentary is immaterial."); *see also United States v. Matthews*, 520 F.3d 806, 811 (7th Cir. 2008) ("[M]erely holding a firearm for a brief period of time is sufficient to constitute possession within the meaning of section 922."); *United States v. Jackson*, 598 F.3d 340, 351 (7th Cir. 2010) ("[T]he legislative history of 18 U.S.C. § 922 indicates that Congress sought to prohibit even a felon's brief possession of a firearm.").

With that aside, the record plainly establishes that Ortiz knowingly possessed a firearm. The Factual Resume and the PSR reflect that Ortiz, a convicted felon, grabbed a Smith & Wesson that was manufactured out-of-

---

[1] Ortiz's brief concedes that he is a "convicted felon" and is silent on the interstate commerce requirement. "[I]ssues not briefed are waived." *United States v. Narviz-Guerra*, 148 F.3d 530, 538 (5th Cir. 1998).

state, ran while holding it, and then discarded it in a nearby trashcan. Accordingly, he knowingly possessed it.

The factual basis establishes all three elements of the offense.

Ortiz insists that his possession was justified because he was acting in self-defense or under duress. In this court, there are four showings a defendant must make in order to prevail on a justification defense.[2] What matters, however, is not whether Ortiz made these showings but whether the defense is element-negating. We begin our analysis of that question with a case, *United States v. Parker*, that predates the express recognition of the justification defense in the felon-in-possession context. 566 F.2d 1304 (5th Cir. 1978).

In *Parker*, this court examined a conviction under 26 U.S.C. § 5861, a statute prohibiting knowing possession of unregistered firearms. *Id.* at 1305. At trial, the defendant, Parker, admitted that he retrieved an unloaded shotgun from another room after an aggressive acquaintance cut him on the nose with a pocketknife. *Id.* When jury members asked whether they should consider the reason for Parker's shotgun possession, the trial judge responded, "No." *Id.* On appeal, Parker challenged that instruction and argued,

---

[2] This court "has established the four elements of the justification defense" as follows:
>   (1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury";
>   (2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]";
>   (3) that defendant had no "reasonable legal alternative to violating the law; a chance both to refuse to do the criminal act and also to avoid the threatened harm"; and
>   (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."

*United States v. Harper*, 802 F.2d 115, 117 (5th Cir. 1986) (quoting *United States v. Gant*, 691 F.2d 1159, 1162–63 (5th Cir. 1982)).

essentially, that in order to prove "knowing" possession, the government had to prove that his possession was not justified.

This court disagreed. Opining on the meaning of "knowing possession" in this context, we explained:

> Defendant contends that 'knowing' possession means possession not justified by some innocent reason. In effect, defendant's interpretation would require the Government to prove, as an element of the offense under § 5861(d), not only that defendant willfully possessed the weapon, but that he had no good reason to justify his possession. The plain reading of the statute and the decided cases are to the contrary. The Government need only show that defendant willfully and consciously possessed an item which he knew to be a firearm.

*Id.* at 1306. The court ultimately concluded that it "need not decide" whether "a defendant may *ever* in defense allege some justification based on the circumstances attending his illegal possession of an unregistered firearm" because Parker was, factually, ineligible for it—he had continued possessing the gun after the threat subsided. *Id.* (emphasis added).

Despite *Parker*'s fact-bound conclusion, the case reinforces the distinction between an "element of the offense" and a justification defense, concluding that justification would not negate any element of the crime.

On the same day *Parker* was argued, the same panel heard argument in *United States v. Hammons*, 566 F.2d 1301 (5th Cir. 1978), *vacated and remanded on other grounds*, 439 U.S. 810 (1978). In *Hammons*, the defendant was convicted under 18 U.S.C. § 922(h) for illegally receiving a firearm as a convicted felon. *Id.* at 1302. The defendant, as in *Parker*, argued that his receipt was justified under the circumstances. *Id.*

Again on the unique facts of the case, the court disagreed. *Id.* at 1304 ("We express no opinion on whether a different set of facts might support the judicial creation of such a defense to § 922(h)."). The court in *Hammons* took

11

the opportunity to emphasize, however, that *knowing and justified* receipt (as opposed to just *knowing* receipt) was not an element of the offense:

> Defendant does not contend that the Government must prove, as an element of the offense under § 922(h), that defendant received the gun without legal excuse . . . This argument as to a similar statute was rejected in [*Parker*], . . . [where we] held that the Government need only show that defendant willfully and consciously possessed what he knew to be a firearm.

*Id.* at 1303 & n.3.

*Parker* and *Hammond* compel the conclusion that Ortiz satisfied the knowing possession element when he grabbed the gun and ran with it. Whether he did so under duress or in self-defense does not negate this offense element.

The case on which Ortiz relies for the contrary position, *United States v. Panter*, 688 F.2d 268 (5th Cir. 1982), is unavailing. There, defendant Lester Panter was convicted under the predecessor to § 922(g). *Id.* at 269.[3] On appeal, he argued that "the jury should have been allowed to consider his self-defense theory," which the district court had failed to include in its instructions. *Id.*

This court summarized the case's remarkable facts, in the light most favorable to Panter,[4] as follows:

> Panter was tending bar at the Roadrunner Lounge in Jackson County, Mississippi, on the evening of March 28, 1980. Bud Lins, a convicted murderer, was present and had been drinking heavily. He approached Panter after a brief argument between the two and stated: "Well, you ain't done me right. I'm going to kill you." Lins forthwith set out to keep this promise. He brandished a pocketknife and stabbed Panter in the abdomen. But Panter did not succumb easily; he began to fight back. He soon found himself

---

[3] *See United States v. Leuschen*, 395 F.3d 155, 157 (3d Cir. 2005) (describing 18 U.S.C. § 1202(a) as "a predecessor" of § 922(g)).

[4] "[B]ecause error is alleged in the jury instructions, we must view the facts in the light most favorable to him." *Panter*, 688 F.2d at 269 (citing *United States v. Young*, 464 F.2d 160, 164 (5th Cir. 1972)).

on the floor beneath his assailant, however, and he reached underneath the bar for a club that he knew was kept there. At this point providence intervened. Panter's hand fell not upon the intended club, but rather upon a pistol. Three shots subdued Lins, who died the next day.

Immediately after the shooting, Panter placed the pistol on the bar, where it was later found by the police. The gun belonged to an employee named Judy, who later married Panter. He never touched it either before or after the fateful encounter with Mr. Lins.

*Id.* at 269. Crucially, "Panter admitted possessing the gun for the short time necessary to defend himself from Lins." *Id.* at 270. He sought only to "convince the jury that he possessed the gun only then and only in self-defense." *Id.*

*Panter* squarely presented the question that had escaped scrutiny in *Parker* and *Hammons*: "whether the existence of exigent circumstances or an emergency is a defense to a firearms possession charge." *Id.* at 270–71. The *Panter* court first noted that the statutory language "prohibits convicted felons in absolute terms from possessing firearms," with "no express exemption for possession in self-defense or for any other emergency." *Id.* at 271. But, the court observed, "[W]e must be mindful that 'Congress in enacting criminal statutes legislates against a background of Anglo-Saxon common law . . . .'" *Id.* (quoting *United States v. Bailey*, 444 U.S. 394, 415 n.11 (1980)). And "[p]art of this common law is the doctrine of self-defense." *Id.*

Accordingly, *Panter* concluded:

[W]e reject the government's argument that the proscription of § 1202(a)(1) is absolute and admits of no self-defense exception. We hold today that where a convicted felon, reacting out of a reasonable fear for the life or safety of himself, in the actual, physical course of a conflict that he did not provoke, takes temporary possession of a firearm for the purpose or in the course of defending himself, he is not guilty of violating § 1202(a)(1).

*Id.* at 271–72. As later cases have recognized, *Panter* stands for the "general availability of common-law defenses" to a felon-in-possession charge. *United States v. Gant*, 691 F.2d 1159, 1161 (5th Cir. 1982) (citing *Panter*, 688 F.2d 268); *see also United States v. Anderson*, 885 F.2d 1248, 1254 (5th Cir. 1989) ("[I]n [*Panter*], we created a self-defense exception to the offense of possession of a pistol by a felon . . . ."). But *Panter* did not purport to disturb previous authorities holding that justification does not negate any *element* of the offense.

For reasons explained below, we need not resolve today whether the factual basis in this case contains a viable justification defense. Assuming *arguendo* that it does, Ortiz's conviction stands.

## F. Whether the Factual Basis Was Insufficient If It Established Justified Possession

This court has not yet decided whether a district court errs in accepting a guilty plea when the factual basis contains an affirmative defense that does not negate any offense element.[5]

Our cases have generally approached post-plea sufficiency challenges by comparing the factual basis to the offense elements. We have not taken it upon ourselves, nor required district courts, to scan for possible affirmative defenses. *See, e.g.*, *United States v. Crain*, 877 F.3d 637, 645 (5th Cir. 2017) ("To determine whether a defendant's factual basis is sufficient to support his guilty plea, the district court must examine each element of the offense charged.") (cleaned up); *United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992) ("The

---

[5] We emphasize that this case is confined by the non-element-negating nature of the justification defense. *Parker*, 566 F.2d at 1306; *Hammons*, 566 F.2d at 1303. We also acknowledge the possibility that a justification defense might negate an offense element in a unique and different context. *See Dixon v. United States*, 548 U.S. 1, 7 & n.4 (2006) ("[T]here may be crimes where the nature of the *mens rea* would require the Government to disprove the existence of duress beyond a reasonable doubt.").

record must reveal specific factual allegations supporting each element of the offense."); *Marek*, 238 F.3d at 315 (directing trial courts to compare "(1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment or information").

In *United States v. Smith*, the Second Circuit explicitly endorsed that approach:

> [O]nce a defendant has admitted to all the elements of an offense, the district court is not required to exercise discretion under [Rule 11] to reopen its inquiry into the factual basis for the guilty plea in order to explore a possible defense of justification, at least where justification negates none of the offense elements.

160 F.3d 117, 123 (2d Cir. 1998).

Other circuits appear to do the same. *See Dismuke v. United States*, 864 F.2d 106, 107 (11th Cir. 1989) ("Nothing in Rule 11 requires the trial judge to inform the defendant of every possible defense he may have."); *United States v. Luna-Munoz*, 234 F. App'x 762 (9th Cir. 2007) ("Rule 11 of the Federal Rules of Criminal Procedure does not require a district court to inform the defendant of potential justification defenses—or to rule them out—before accepting a guilty plea."); *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988) ("The defendant's position in this case would go too far toward converting plea hearings into law school seminars on possible defenses and mini-trials on questions of factual guilt."); *see also* 1A Charles Alan Wright, et al., Federal Practice and Procedure § 179 (4th ed. 2011) ("There need not be a factual basis for something that is not an element of the offense charged.")

We follow their lead. Even if the factual basis here revealed that Ortiz's possession were justified, it nonetheless established that his conduct satisfied every element of the offense. Accordingly, the district court did not err in accepting the plea.

AFFIRMED.