THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODERICK JAMES, Defendant-Appellant.

First District (5th Division)   No. 1—86—3311

Opinion filed March 10, 1989.

Randolph N. Stone, Public Defender, of Chicago (Dennis E. Urban, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Catharine M. Forest, Francine Taylor-Thirus, and Mark A. Shlifka, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Following a jury trial, defendant was convicted of unlawful use of weapons by a felon and sentenced to four years in the penitentiary. (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1.) Prior to trial, defendant filed a written motion to suppress evidence on the ground that the police lacked probable cause. That motion was denied. On appeal, defendant contends that (1) the trial court erred in ruling he had failed to sustain his burden on the motion to suppress and (2) the trial court denied him a fair trial when it refused to instruct the jury on the defense of necessity.

Defendant testified at a suppression hearing that on December 19, 1985, he lived in Marietta, Georgia, but was in Chicago visiting his mother for the holidays. At approximately 3:15 p.m., he went to his brother's home at 908 West 58th Street in Chicago. When no one answered the doorbell, he returned to his 1977 Camaro. Detectives then drove up and told him that the car was stolen and to get out of the car. They searched him and found eight bullets and a derringer pistol in his jacket pocket. The police investigation later showed that his car had not been stolen.

Chicago police detective David Jarmusz testified that he was with Detective Collello conducting surveillance on a building at 908 West 58th Street because drugs were supposedly being sold there. He saw defendant exit this building and cross the street to a car. As the officers drove up to defendant, Jarmusz saw defendant counting what appeared to be a handful of bullets which he held in the palm of his hand as he walked across the street. Defendant stopped, and as the police vehicle approached to within several feet of defendant, the officer could clearly see that the objects in defendant's hand were bullets. He asked defendant if he had an Illinois State firearm owner's identification card, and defendant said that he did not. Jarmusz confiscated the bullets and arrested defendant, then searched defendant and found a .38 caliber two-shot derringer in the right-hand pocket of defendant's coat. The officer said that the incident was not precipitated by a "stolen" car.

The trial court denied defendant's suppression motion, stating it did not believe defendant had sustained his burden.

Detective David Jarmusz testified at trial concerning his apprehension of defendant and recovery of bullets and the weapon, which he identified in court.

Chicago police officer Sol Collello testified that he was with Officer Jarmusz on December 19, 1985, in an unmarked police car conducting a surveillance of a building at 907 West 58th Street when he saw defendant leave the building holding something in his hand. Collello drove toward defendant, stopped and exited the vehicle. Jarmusz then saw that defendant had bullets in his hands and asked defendant if he had a firearm owner's identification card. Defendant said that he did not and was placed under arrest. Jarmusz conducted a search of defendant, and Officer Collello took a .38 caliber derringer from defendant's pocket.

It was stipulated that defendant was convicted of involuntary manslaughter on November 1, 1979, and sentenced to probation for four years.

Defendant testified that he came to Chicago from Georgia where he was attending college to visit his mother for Christmas on December 16, 1985. The following day three gang members told him that they were going to revenge the death of their cousin whom defendant killed in 1978. When he told his brother of this threat, his brother gave him the derringer. Later, defendant discovered that the weapon did not work, and he went to the building under surveillance to return it to his brother. When nobody answered the door, he walked back to his car, but a detective told him to get out of his car because he was running a check to see if the car was reported stolen. The officer then searched him, and the derringer and some bullets were recovered from his jacket pocket. He denied that he had anything in his hands including bullets as he walked back to his vehicle. He denied that he told police that he was a member of the Disciple Nation street gang.

Detective David Jarmusz testified in rebuttal that he asked defendant at the police station if he was a gang member. Defendant responded that he was a "D," meaning a member of the Disciple Nation street gang.

■ ■ Defendant first argues that the trial court erred in ruling that he failed to sustain his burden on his suppression motion. In a proceeding on a motion to suppress evidence, the burden of proving that the search was unlawful is on defendant, but the burden of proving the validity of the arrest is shifted to the State when defendant shows that he was doing nothing unusual at the time of his arrest and

makes a *prima facie* case that the police lacked probable cause to arrest him. (*People v. Stokes* (1981), 102 Ill. App. 3d 909, 914, 430 N.E.2d 370.) Defendant argues that it is evident from his testimony that he was not doing anything unusual at the time of his arrest, and he describes the testimony of the police officers that he was counting bullets in his hands on a public street as "totally incredible." In denying the motion, the court said that it did not believe defendant had sustained the burden, that the officer's testimony had been impeached by a discrepancy concerning the location of the police car and that defendant had been impeached by a prior conviction. Defendant here made a motion at the end of his case, and the trial court's remarks, coming at the close of all the evidence presented at the hearing, reflect its view that defendant did not meet his burden of showing that he was doing nothing unusual at the time of his arrest and did not make a *prima facie* case that the police lacked probable cause to arrest him. Here, the trial court did not accept defendant's testimony. As defendant now indicates by his argument that the police testimony that he was counting bullets was "totally incredible," the issue was one of credibility. The trial court's order is presumed to be correct, and this court may not substitute its judgment regarding the credibility of the witnesses. (*People v. Gunsaullus* (1979), 72 Ill. App. 3d 440, 442, 391 N.E.2d 142.) We cannot say, given the evidence presented, that the trial court's finding was manifestly erroneous since defendant's evidence did not meet his burden unless the trial court believed his testimony, which it clearly did not.

■■ Defendant also contends that the trial court erred in refusing tendered instructions on the affirmative defense of necessity. (Ill. Rev. Stat. 1985, ch. 38, par. 7—13.) Defendant is entitled to an instruction on the defense theory of necessity if some evidence has been introduced to support the defense. (*People v. Unger* (1977), 66 Ill. 2d 333, 338, 362 N.E.2d 319.) The court in *People v. Unger* considered the necessity defense in the context of a prisoner charged with escape who testified that he was subjected to threats of homosexual activity, that on one occasion the threatened abuse was carried out, that he was physically incapable of defending himself, that he was told that he was going to be killed and that he then escaped to save his life. The statute provides:

> "Necessity. Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably

result from his own conduct." (Ill. Rev. Stat. 1985, ch. 38, par. 7—13.)

The accused therefore must be without blame in occasioning or developing the situation and reasonably believe that his conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct. Not every remark is specific enough to rise to the level of a direct threat or be so dire a warning as to reasonably instill the degree of fear of impending harm claimed to necessitate defendant's actions and require an instruction on necessity. *People v. Bivens* (1987), 156 Ill. App. 3d 222, 228, 509 N.E.2d 640.

In *People v. Perez* (1981), 97 Ill. App. 3d 278, 422 N.E.2d 945, defendant argued on appeal that he was not proved guilty beyond a reasonable doubt of unlawful use of weapons because he acted out of necessity in carrying a loaded revolver to defend himself against certain members of a street gang who had threatened his life as part of an ongoing feud. Since defendant stopped to engage in a gunfight, the appellate court found that he had not shown he was without blame in occasioning or developing the situation. Further, the court found defendant could not reasonably have believed that carrying a weapon was necessary to avoid a private injury since the second element of the defense justifies only such otherwise illegal conduct which constitutes the sole reasonable alternative available and said:

> "Simple common sense conjoined with the record in this case prohibits the conclusion that the sole reasonable alternative available to defendant was to carry a loaded revolver within the City of Chicago in order to protect himself against threats allegedly made against him. Only the most obvious 'more reasonable' alternative, that of avoiding contact with the threatening street gang members by avoiding their 'territory,' needs mention here." 97 Ill. App. 3d at 281.

In *People v. Roberts* (1985), 136 Ill. App. 3d 863, 483 N.E.2d 1328, a jury instruction on necessity to a charge of unlawful use of weapons was held properly refused despite defendant's evidence that there was a contract on his life, that he was without blame in developing that situation of a contract on his life and that he reasonably believed it was necessary to carry a gun to avoid his own murder. The court found that defendant was clearly to blame in occasioning the situation of his presence in a tavern where a shooting occurred because he could have chosen not to enter the tavern and there was no evidence he could reasonably have believed it necessary to avoid a greater danger that he carry a gun into the tavern. 136 Ill. App. 3d at 865.

■ In the case at bar, defendant testified that three gang members threatened to kill him in retaliation for defendant's earlier killing the gang-members' relative. Defendant was subsequently prosecuted for this homicide, resulting in his 1979 conviction for involuntary manslaughter. In rejecting the instruction in the present case, the trial court stated that if the instruction were given in this case, it should be given in every case where a defendant lived in a neighborhood where there are gangs, thereby allowing every person to publicly carry a gun. The trial court also found that there was no imminent situation because a threat was made about a 1978 incident which did not give defendant the right to carry a gun. The trial court also found that there were alternatives for defendant, such as leaving the inoperable gun at his mother's house for his brother to retrieve or calling the police to report the threat.

Defendant did not introduce evidence that he was without blame with respect to the 1978 incident; indeed, he was convicted of a homicide in connection with that incident. While there was no indication that he was to blame for the conduct of the three gang members in threatening him in 1985, we find no evidence that he reasonably believed carrying a gun was necessary. As the court pointed out, other alternatives were available. Defendant testified that he was living in Georgia and came to Chicago only temporarily to visit his family for Christmas. Clearly he had other alternatives available to him, which preclude a reasonable belief on his part that carrying a handgun was necessary to avoid public or private injury greater than the injury which might reasonably result from his own conduct. We conclude that defendant's evidence, if believed, did not establish some evidence of necessity and that the court properly refused defendant's request for a necessity defense instruction.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and COCCIA, JJ., concur.