819 P.2d 1324

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Arthur CASTRILLO, Defendant–
Appellant.**

**No. 19821.**

Supreme Court of New Mexico.

Oct. 15, 1991.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BACA, Justice.

We accepted certification of this appeal from the court of appeals pursuant to NMSA 1978, Section 34–5–14 (Repl. Pamp. 1990) to clarify the law of duress as a defense to the crime of felon in possession

of a firearm. We also consider the other two issues raised in this appeal: Whether the trial court improperly denied defendant's motion to discharge the jury, and whether the use of the same prior felony to prove the crime of felon in possession of a firearm and defendant's status as a habitual offender violates double jeopardy. We affirm the district court's resolution of the first two issues and remand for resentencing as to the last claim.

Defendant-appellant Castrillo acknowledged before trial that he was a convicted felon and had been in possession of a firearm. He notified the court he would present a defense of duress, based on several incidents that allegedly caused him to reasonably fear immediate bodily harm and to purchase a firearm to protect himself. Those incidents include (1) defendant's estranged wife intentionally smashed his car windshield five and one-half months prior to defendant purchasing the weapon; (2) approximately one month later she appeared at the home of defendant's parents (where he was staying), shouted obscenities, and fired a gun; and (3) during the same time frame, the former boyfriend of defendant's girlfriend threatened to kill him and apparently was armed. After that incident, defendant and his girlfriend moved to Albuquerque to avoid further problems. They remained there for four months, but the relationship ended, and defendant returned to Roswell. Three days before he bought the weapon, defendant's car was shot up while he was visiting his wife. He had walked to the side of his wife's house to knock on a window when he heard gunshots and screeching tires. He returned to his car to find several bullet holes; several ricochets also had hit the windshield, which was darkly tinted.

The tint made it impossible to see if the automobile was occupied. After he bought the firearm, another incident involving defendant's wife and her family occurred that included an exchange of gun fire.

At trial, defendant submitted an instruction on duress. See SCRA 1986, 14–5130. The court refused the instruction, and defendant was convicted of being a felon in possession of a firearm pursuant to NMSA 1978, Section 30–7–16 (Cum.Supp.1991).

## I.   REFUSAL TO INSTRUCT THE JURY ON DURESS.

To warrant submission to the jury of the defense of duress, a defendant must make a prima facie showing that he was in fear of immediate and great bodily harm to himself or another and that a reasonable person in his position would have acted the same way under the circumstances. *Esquibel v. State*, 91 N.M. 498, 500, 576 P.2d 1129, 1131 (1978); SCRA 1986, 14–5130.[1] If the evidence supports a theory of the case, a defendant is entitled to instruction on that theory. *State v. Venegas*, 96 N.M. 61, 628 P.2d 306 (1981).

### A.   Objection Was Not Untimely.

Defendant contends the state failed to enter a timely objection to his defense. He asserts he was prejudiced by the state's initial acquiescence because at trial he admitted the elements of the crime charged, believing he could present his theory of duress to the jury. We find no error. Defendant bore the burden to present a prima facie case of duress warranting its submission to the jury. *See Esquibel*, 91 N.M. at 501, 576 P.2d at 1132. The state did not act improperly when it waited until after

---

1. The jury instruction on duress as a defense to a nonhomicide states:

   Evidence has been presented that the defendant was forced to [commit acts constituting an offense] under threats. If the defendant feared immediate great bodily harm to himself or another person if he did not commit the crime and if a reasonable person would have acted in the same way under the circum-

stances, you must find the defendant not guilty.

   The burden is on the state to prove beyond a reasonable doubt that the defendant did not act under such reasonable fear.

SCRA 1986, 14–5130; *see also id.* 14–5131, –5132 (instructions on duress in a homicide and in an escape from jail or penitentiary).

defendant presented his case to object to its submission to the jury. Although it had notice of the facts that defendant sought to prove in his prima facie case, the state could not know whether defendant would carry his burden until the evidence had been presented.

### B. Immediacy of the Feared Harm.

We address whether, and if so, to what extent, the defense of duress is available to a convicted felon accused of the offense of felon in possession of a firearm. The duress defense is similar, in this context, to other justification defenses, and thus we turn to other courts' analyses of those similar defenses to provide guidance. *See, e.g., United States v. Nolan,* 700 F.2d 479, 484 (9th Cir.) (duress defense comparable to coercion, necessity, or self defense in this context), *cert. denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983); *State v. Crawford,* 308 Md. 683, 691 n. 1, 521 A.2d 1193, 1197 n. 1 (1987) (discussing distinction between duress and necessity). Duress recognizes psychological coercion— it is a threat that "operates upon the defendant's mind" and causes him to justifiably violate a criminal law to avoid greater harm. W. LaFave & A. Scott, Jr., *Criminal Law* § 49, at 374 (1972).[2]

Initially, we discern no reason why the defense of duress, under the appropriate circumstances, should not be available to a felon accused of possessing a firearm. *See, e.g., United States v. Panter,* 688 F.2d 268 (5th Cir.1982) (self-defense available to a felon); *Crawford,* 308 Md. at 696, 521 A.2d at 1199 (necessity may be a defense to illegal possession of handgun charge); *see generally* Annotation, *Fact that Weapon was Acquired for Self–Defense or to Prevent its Use Against Defendant as De-fense in Prosecution for Violation of State Statute Prohibiting Persons Under Indictment for, or Convicted of, Crime from Acquiring, Having, Carrying, or Using Firearms or Weapons,* 39 A.L.R.4th 967 (1985) (weight of authority supports allowing affirmative defenses in nature of justification).

In its certification to us, the court of appeals determined that defendant's testimony about his state of mind, together with evidence of threats and threatening acts, sufficed to create jury issues on whether he was afraid and whether he feared great bodily harm. We agree with that portion of its analysis. The court also determined that the evidence created a jury question regarding whether a reasonable person would have acted the same way under the circumstances. We shall return to that question, but first we address the element of immediacy.

In *Esquibel,* this court addressed the meaning of "immediate danger of death or serious bodily harm." In that case, we held that it depends on the circumstances of the individual case and determined that a prolonged history of beatings and threats, including a threat some two to three days prior to the crime, sufficed to present a question for the jury. 91 N.M. at 501–02, 576 P.2d at 1132–33; *see also State v. Torres,* 99 N.M. 345, 657 P.2d 1194 (Ct. App.1983) (immediacy of compulsion can be found in threat of future harm); *State v. Norush,* 97 N.M. 660, 642 P.2d 1119 (Ct. App.1982) (duress can be found where there is a continuing and constant fear of great bodily harm that extended for a substantial period of time); *State v. Lee,* 78 N.M. 421, 432 P.2d 265 (Ct.App.1967) (defense of duress not established by showing defendant threatened with evidence at some prior time; what is required is per-

---

**2.** Duress is distinguished from necessity by the nature of the threat. Duress requires pressure from other people, whereas necessity requires pressure from physical, natural causes. *See* W. LaFave & A. Scott, *supra,* § 50. In both, although the threat may build over a period of time, the perceived harm must be imminent.

Similarly, self defense provides a justification for an otherwise criminal act; strictly speaking, however, it is not a defense to possession, although it may justify the possession. *See United States v. Panter,* 688 F.2d 268, 272 n. 7 (5th Cir.1982).

sonal constraint at time crime committed).[3]

■ We agree with the court of appeals that *Esquibel* and the court of appeals' precedent indicate that the requirement of immediacy should not be interpreted too literally when a defendant's fear is based on a pattern of prior threats. However, a prolonged period of threats, extending until two to three days before the crime is committed, is not a talisman creating a question of fact whether a defendant feared immediate harm in every circumstance.

■ The facts and circumstances surrounding alleged duress when the crime charged is felon in possession of a firearm will necessarily differ from other crimes. The offense is a possessory crime imposing liability approaching strict liability for its transgression. *See State v. Haddenham*, 110 N.M. 149, 149, 793 P.2d 279, 279 (Ct. App.), *cert. denied*, 110 N.M. 183, 793 P.2d 865 (1990); *see also Nolan*, 700 F.2d at 484 (federal firearms law approaches absolute liability). Its purpose is to keep firearms from felons because the law presumes they are more likely to unlawfully use firearms or to resort to force in violation of the law. *See People v. King*, 22 Cal.3d 12, 21, 582 P.2d 1000, 1005, 148 Cal.Rptr. 409, 414 (1978) (in bank). The prohibition against the possession of firearms must be read together with permissive and legitimate uses of firearms. While the prohibition against possession may be relaxed when the possession is justified, a felon is justified to possess a firearm only when strictly required because of the strict liability nature of the offense and the evil the offense is designed to prevent. Thus, the felon may be forced to resort to alternatives that a nonfelon would not be required to pursue before arming himself. *See id.* at 25, 582 P.2d at 1007, 148 Cal.Rptr. at 416; *Panter*, 688 F.2d at 271 (balance absolute prohibition against possession with right to defend self).

■ A common sense examination of the problem demonstrates the propriety of this approach. The strict liability of the crime of felon in possession of a firearm makes a convicted defendant criminally liable the moment he takes possession of a firearm. Thus, for example, a felon who is attacked and wrestles a weapon from his attacker would be criminally liable absent the availability of a justification defense. *See, e.g., Panter*, 688 F.2d at 269 (defendant was tending bar; he was attacked and stabbed; when he fell to the floor, he reached for a club beneath the bar but instead found waitress's gun); *Crawford*, 308 Md. at 685–90, 521 A.2d at 1194–96 (defendant attacked in apartment and wrestled gun from assailant). It would make no sense to subject a felon to the Hobson's choice between criminal liability or acquiescence to attack. On the other hand, felons are presumed to be prone to violence and, thus, are prohibited from possessing firearms. That firearms may escalate violence is aptly demonstrated by the case at bar where the defendant, having armed himself ostensibly out of fear that his estranged wife or her family would attack him, escalated a confrontation into a shoot out. *See also United States v. Agard*, 605 F.2d 665 (2d Cir.1979) (no defense of coercion or duress available where defendant initiated altercation).

■ Application of the concept of duress to a charge of felon in possession does not require us to develop special rules or alter the law of duress. We merely evaluate the different elements in the context of the strict liability crime of felon in possession of a firearm. In *Esquibel*, in the context of an inmate confined to prison and faced with a history of threats and violence, a prima facie case was made out that a reasonable person in the defendant's position would perceive an imminent threat to his welfare; moreover, escape could be perceived as the reasonable avenue when

---

**3.** We also defined the defense broadly to be available in any crime except that of homicide or one requiring an intent to kill. *Esquibel*, 91 N.M. at 501, 576 P.2d at 1132. The availability of the defense for the crime of escape from jail or the penitentiary was subsequently narrowed. *See* SCRA 1986, 14–5132.

prison guards were beating and threatening the defendant. The case at bar, however, presents a different problem for a defendant trying to show a prima facie case. A reasonable felon, knowing that possession of a firearm is a felony, is expected to pursue other possible avenues of relief before arming himself.

In its certification, the court of appeals assumed that whether a reasonable person would arm himself was a jury question. Evaluation of a prima facie case, however, requires a court to determine whether, as a matter of law, sufficient evidence under the circumstances of the case warranted submission to the jury. *See Esquibel*, 91 N.M. at 501–2, 576 P.2d at 1132–33.

Fear of immediate harm must be viewed together with whether a reasonable person in the defendant's position would have acted the same way under the circumstances. That latter element implicitly presumes that a reasonable person would not violate the law if legal alternatives are available. A person, operating under some psychological coercion and faced with a panoply of choices including legal and illegal alternatives, cannot opt for the unlawful alternative if legal avenues to relief are available. A court should not focus on the immediacy of the threat in a vacuum; in evaluating a potential defense of duress, a threat of immediate bodily harm must be considered in the context of the reasonableness of the response to that harm.[4]

To support a prima facie case of duress, there must be some reasonable nexus between the harm feared and the crime that was committed in response to that fear.[5] Thus, in *Esquibel*, the crime committed—attempted escape from the penitentiary—was reasonably connected to the harm feared—beatings and violence at the hand of guards. In this case, defendant allegedly feared a harm—violence by defendant's wife and her family—to which he responded by committing a crime—possessing a firearm. In the context of this case, we discern no connection between the harm feared and the crime committed. The obvious response to threatened violence—especially a nebulous, potential, future violence—is not to resort to possession of a weapon. It is not at all clear that possession of a firearm will alleviate the threat or in any way lessen a potential harm. Stated another way, the defense of duress is available against the charge of felon in possession only when no reasonable alternatives are available—a reasonable felon would resort to possession of a firearm only when committing the offense is the only reasonable alternative.

The felon is justified to possess a firearm for a period of time no longer than is justified by the circumstances constituting the duress. This may have the effect of compressing the time frame within which the facts and circumstances surrounding the alleged duress may be analyzed. It does not, however, limit the availability of the defense; it merely takes into

---

**4.** Accordingly, we reject defendant's assertion that authority from other jurisdictions is inapplicable to New Mexico because the law of duress differs in several respects. Defendant attempted to distinguish *People v. James*, 180 Ill. App.3d 461, 129 Ill.Dec. 382, 535 N.E.2d 1147 (1989), because in Illinois a defendant must show he was blameless in creating the situation and because he must demonstrate the illegal conduct was necessary to avoid a greater injury, whereas, he asserts, those elements are not present in New Mexico law. Those elements, however, in New Mexico are subsumed under the reasonableness element. *See also People v. Roberts*, 136 Ill.App.3d 863, 91 Ill.Dec. 693, 483 N.E.2d 1328 (1985) (defendant not entitled to

necessity defense because he could have avoided presence in tavern with a weapon). The scope of those considerations normally would raise a jury question if a defendant carries his initial burden to present a prima facie case.

**5.** *See United States v. Gant*, 691 F.2d 1159, 1164–65 (5th Cir.1982) (to assert defense defendant must show "a direct causal relationship could be reasonably anticipated between the proscribed action and the avoidance of the threatened harm;" under certain circumstances, "interjection of a firearm [may] escalate[] the danger for everyone").

account the nature of the crime, the evil the crime is designed to prevent, and the nature of the defense. Whereas a nonfelon reasonably may feel under the circumstances that a resort to arms is an appropriate response to acts constituting duress, a nonfelon is not under the strict restrictions regarding possession of a firearm. The felon, however, is greatly circumscribed in his freedom in this regard and can be expected, as a reasonable felon—or at least one who wishes to avoid further confinement—to pursue other actions before committing the crime.

In the present case, for example, the defendant could have contacted the police, or simply avoided his estranged wife. He chose, however, to arm himself, purchasing a handgun after an incident that occurred when defendant went to his wife's sister's house to visit his wife.[6] He could have avoided this apparently inflammatory behavior and thereby avoided his perceived need to arm himself. The fifth incident, the shoot out at defendant's parent's house, is irrelevant to whether a reasonable felon would have procured a firearm. The offense occurred the moment defendant purchased the weapon. It may have been relevant to whether defendant's fears and perceptions of imminent harm were reasonable; however, the incident subsequent to the purchase does not justify his possession of the weapon for seven days prior to that last incident. Moreover, our evaluation of the fifth incident indicates

that defendant still had other opportunities to act to avoid arming himself. When his wife and her family appeared in front of his parents' house, defendant could have stayed inside; if he felt a threat was posed, he could have called the police. Imminent violence and the threat of immediate serious bodily harm did not occur until defendant confronted the family in the car. Defendant thus could have avoided the subsequent shoot out at his parent's house if he had pursued reasonable alternatives to arming himself and confronting his wife and her family.[7]

To decide this question otherwise would essentially give a felon license to violate the prohibition against possession of a firearm once that person intentionally places himself in a situation where violence is expected. The convicted felon should be expected to pursue a lifestyle that, as much as possible, removes him from the threat of violence. While this may not always be possible, the solution to threatened violence, in the felon's case, is not immediate resort to firearms. To sanction duress as a defense under the circumstances presented in the present case would allow possession of a firearm by a felon not only as required to meet an immediate threat, but also for a significant period of time—defendant possessed the weapon for a week before the fifth incident involving use of that weapon.

Accordingly, we affirm the district court's refusal to submit the defense of duress to the jury. Defendant had not made out a prima facie case.

> Simple common sense conjoined with the record in this case prohibits the conclusion that the sole reasonable alternative available to defendant was to carry a loaded revolver in the City of Chicago in order to protect himself against threats allegedly made against him. Only the most obvious "more reasonable" alternative, that of avoiding contact with the threatening street gang members by avoiding their "territory" needs mention here.

*Id.* at 281, 52 Ill.Dec. at 739, 422 N.E.2d at 948; *see also Gant,* 691 F.2d at 1164 (justification defense can be asserted only when there is no choice between legal and illegal alternatives; because defendant simply could have called the police, a legal alternative was presented to arming himself).

**6.** The incident involving the former boyfriend of defendant's former girlfriend has at most a tangential relationship to the asserted duress. The incident occurred over four months prior to defendant's purchase of the firearm. Moreover, the cause of the initial altercation would appear to have been alleviated when the relationship between defendant and the woman ended.

**7.** In *People v. Perez,* 97 Ill.App.3d 278, 52 Ill.Dec. 736, 422 N.E.2d 945 (1981), the court considered a necessity defense to the unlawful use of weapons because the appellant asserted he needed to arm himself to defend against gang members who had threatened his life. It found he could not reasonably believe the offense was necessary because the crime was not the sole reasonable alternative available, and stated:

## II. JURY VENIRE COMPOSITION.

■ Defendant asserts he was denied his right to a venire composed from voter registration and driver's license records as required by NMSA 1978, Section 38–5–3 (Cum.Supp.1991). In *State ex rel. Stratton v. Serna*, 109 N.M. 1, 780 P.2d 1148 (1989), we found the plain language of Section 38–5–3 required the jury pool to be expanded ninety days after the next general election. Appellants trial took place before the expanded pool took effect. Section 38–5–3 was not violated.

## III. DOUBLE JEOPARDY.

■ Defendant asserts that the use of the same prior felony to prove both the crime of felon in possession of a firearm and defendant's status as a habitual offender violated double jeopardy principles. The state concedes that enhancement of defendant's sentence as a habitual offender was improper under *State v. Haddenham*, 110 N.M. 149, 793 P.2d 279 (Ct.App.), *cert. denied*, 110 N.M. 183, 793 P.2d 865 (1990). Because the state has conceded this question, we vacate the enhancement provision of defendant's sentence and remand for resentencing.

In accordance with the foregoing, we affirm the decision of the trial court regarding the composition of the jury venire and its refusal to instruct the jury regarding duress. We remand for resentencing on the habitual offender conviction.

IT IS SO ORDERED.

RANSOM, C.J., and MONTGOMERY, J., concur.