THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN J. CORD, Defendant-Appellant.

Second District   No. 2—92—1378

Opinion filed March 2, 1994.

Daniel R. Zeit, of Ori, Fox, Lunardi & Zeit, of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

On appeal, defendant, John J. Cord, contends that it was error for the trial court to deny his request for a jury instruction on the affirmative defense of necessity.

After a jury trial on September 30, 1992, defendant was found guilty of driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501(a)(2) (now 625 ILCS 5/11—501(a)(2) (West 1992))). Defendant had been arrested and charged following a three-car accident which occurred at approximately 9:30 p.m. on July 10, 1991, at the intersection of Washington Street and Route 83 in Grayslake, Illinois.

At trial, the court denied defendant's request to include a jury instruction on the affirmative defense of necessity. The trial court denied his post-trial motion, which also raised the issue of the denial of his request for the same jury instruction. Defendant was sentenced to two years' probation conditioned on the payment of a fine of $650, level III alcohol counseling, and attendance at a victim impact panel. The court also imposed a 30-day jail term that was stayed for six months and made subject to vacatur pending defendant's compliance with the conditions of probation.

At trial, Marco Alfano testified that, on July 10, 1991, he was waiting in his vehicle at the intersection of Route 83 and Washington Street in Grayslake. There was a car behind him, and there was a car in front of him which left as the traffic light turned green. In the car behind him, there was a female with two small children. The road was dry and it was clear outside, and there were streetlights at

the intersection. Before Alfano could proceed through the intersection, there was an accident in which his vehicle was hit from behind. Alfano stopped his car and heard a voice behind him. When he got out of the car, he saw that the woman driving the car behind him, which rear-ended him, was still in her car with her children, and defendant was standing next to the driver's window. Alfano was able to view the area around him and saw no one running or walking away from the scene. He saw the woman's car and then a third car that was behind hers. Alfano spoke to defendant, who said that it was his girlfriend who had been driving the third car, but Alfano did not see the girlfriend. Alfano left his car parked until the police arrived; he did not receive a traffic citation. Defendant requested that Alfano and the woman move their cars, but Alfano advised against this until the officers arrived. Alfano then observed defendant drive his car a distance of about 30 to 50 yards to a neighboring parking lot.

On cross-examination, Alfano said that, after the accident, he saw a few cars travel from the opposite direction but did not recall any cars going in the same direction as his car. After the police arrived, Alfano moved his car off the road to the parking lot. Alfano could not say whether defendant was driving the third car before the accident. On redirect examination, he testified that defendant drove the third car when it was moved to the parking lot.

Deputy George Manis of the Lake County sheriff's department was called to the scene of the accident at about 9:30 p.m. A Grayslake police officer was already on the scene. The three cars were in the parking lot of the Triangle Restaurant. The drivers of the first and second cars could not state for certain who had been driving the third car, but stated that defendant drove the third car to the parking lot after the accident. When Manis interviewed defendant, he saw that defendant's eyes were glassy, he was swaying, and there was a strong odor of an alcoholic beverage coming from defendant's mouth. Manis had a little difficulty understanding defendant, who seemed confused about what had happened. When Deputy White arrived and offered to have defendant take a field sobriety test, defendant refused to do so. On cross-examination, without elaboration, Manis stated that it is prudent to pull cars off a road after a traffic accident at night. Manis further testified that, although there had been a number of accidents at rush hour at this intersection, this accident did not occur at rush hour.

At this stage, the court heard arguments on whether a jury instruction on the necessity defense should be permitted and, based on the evidence adduced, concluded that it should not. The court noted that the officer's opinion that it would be prudent to move the cars was an opinion that should have been objected to.

Deputy Richard White testified that he received a radio dispatch regarding the accident at about 9:30 p.m. and arrived at the intersection about five minutes later. The intersection had two southbound and two northbound lanes on Route 83, and there were two eastbound and two westbound lanes on Washington Street. There were stoplights at the intersection which were working properly. The cars involved in the accident were located in the parking lot when he arrived. A Grayslake police officer had arrived at the scene before White. White learned that when the accident occurred, Alfano was driving westbound in the first car, an AMC Spirit, and was stopped at the red light when he was rear-ended. Mrs. Delaney, who had two young sons with her, was driving the second car, a Mercedes Benz station wagon which rear-ended Alfano's vehicle. There was rear-end damage to Alfano's car and front-end and rear-end damage to Delaney's. Defendant's vehicle sustained front-end damage. Alfano told White that defendant moved his car into the parking lot right after the accident, while the other two vehicles remained on the roadway until the Grayslake police officer told the drivers to move the cars to the parking lot. Defendant said that he had not been driving the third car at the time of the accident, but he was in the car. White noticed that defendant had red, glassy eyes, mumbled speech, and a strong odor of alcohol on his breath; his balance was poor, and he stumbled at times when he walked. White asked him to perform field sobriety tests, and defendant replied that he did not want to take the tests because he was "inebriated" and could not pass them. White then placed him under arrest for DUI. At the police station, defendant stated he had been drinking since 7 p.m. and had consumed six beers.

On cross-examination, White stated his belief that defendant had been driving the third car because the other two drivers had indicated that they saw no one else leave the scene of the accident. White related that defendant had told him he drove the car to the parking lot and that his girlfriend was driving at the time of the accident. However, defendant did not furnish her name. The traffic accident report (defendant's exhibit No. 2) showed that the owner of the car was Michelle Thorn. White further testified that he believed defendant had drunk a lot more than six beers and did not find defendant credible regarding who was driving prior to the accident or how many beers he had consumed. White also stated that the westbound traffic was slow at that time of the evening. He acknowledged that there was a slight curve approximately 150 to 200 yards away from the rear of the accident scene.

Defendant's motion for a directed verdict was denied. Defendant

presented no evidence, but he again requested a jury instruction on the affirmative defense of necessity. The court ruled that there was no evidence sufficient to raise this defense.

■ On appeal, defendant argues that the evidence was sufficient to entitle him to the necessity instruction and that it was reversible error for the trial court to deny his request. A defendant is entitled to an instruction " 'as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.' " (*People v. Berquist* (1993), 239 Ill. App. 3d 906, 915, quoting *Mathews v. United States* (1988), 485 U.S. 58, 63, 99 L. Ed. 2d 54, 61, 108 S. Ct. 883, 887.) An affirmative defense may be raised by the State's evidence, and, if that does not do so, a defendant must present some evidence thereon to raise the defense. *People v. Lyda* (1989), 190 Ill. App. 3d 540, 545.

■ The quantum of proof necessary to raise an affirmative defense is evidence sufficient to raise a reasonable doubt of defendant's guilt. (*Lyda*, 190 Ill. App. 3d at 545; see *People v. Newbolds* (1990), 204 Ill. App. 3d 952, 954; *People v. White* (1979), 78 Ill. App. 3d 979, 981.) Otherwise stated, unless the evidence before the court is so clear and convincing as to permit the court to find as a matter of law that there is no affirmative defense, the issue of whether a defendant should be relieved of criminal liability by reason of his affirmative defense must be determined by the jury with proper instruction as to the applicable law. *Lyda*, 190 Ill. App. 3d at 545.

■ In this case, defendant was entitled to have the jury instructed on the defense of necessity only if evidence sufficient to raise a reasonable doubt of guilt was introduced as to both prongs of the necessity defense: (1) that the accused was without blame in occasioning or developing the situation; and (2) that he reasonably believed his conduct, which would otherwise be an offense, was necessary to avoid a public or private injury greater than the injury which might reasonably have resulted from his own conduct. *Newbolds*, 204 Ill. App. 3d 954; Ill. Rev. Stat. 1991, ch. 38, par. 7—13 (now 720 ILCS 5/7—13 (West 1992)).

This defense is viewed as involving the choice between two admitted evils where other optional courses of action are unavailable, and the conduct chosen must promote some higher value than the value of literal compliance with the law. (*People v. Janik* (1989), 127 Ill. 2d 390, 399.) Some courts have read the second prong of the defense to justify only such otherwise illegal conduct which constitutes the sole reasonable alternative to the act. (*People v. Dworzanski* (1991), 220 Ill. App. 3d 185, 192; *People v. Perez* (1981), 97 Ill. App. 3d 278, 281; see also *People v. James* (1989), 180 Ill. App. 3d 461, 465-66.)

Simply stated, the defense of necessity involves a choice that can be made only between two admitted evils, other options being unavailable. However, "[w]hen another alternative exists besides the two evil choices which, if carried out, would cause less harm, then the accused is not justified in breaking the law." *People v. Haynes* (1991), 223 Ill. App. 3d 126, 128.

■ We conclude, as did the trial court, that the facts presented do not support a necessity instruction on the charge of DUI—particularly with respect to the second prong of the defense. Our review of the evidence persuades us that defendant had other reasonable and lawful alternatives available to him rather than driving the vehicle to the parking lot while he was under the influence of alcohol. Defendant admitted to Deputy White that he was intoxicated and that he drove the car into the parking lot. Alfano stated that he saw defendant drive the car into the lot. Both Manis and White testified regarding the defendant's signs of intoxication including, among others, glassy eyes, swaying, difficulty with speech, and the strong odor of an alcoholic beverage on his breath. The evidence clearly established that defendant was intoxicated and that he drove the vehicle after the accident when he moved it to the parking lot.

Defendant cannot sustain the need for a jury instruction on the defense of necessity because the evidence fails to show that there was no other less harmful alternative. Even though one officer was of the opinion that, in general, it is prudent to pull cars off the road after an accident at night, defendant points to no competent evidence that, in the circumstances of this case, it was *necessary* for *defendant* to drive the vehicle off the road. The other two apparently sober drivers elected to wait a few short moments to move their vehicles until the police arrived to view the scene. We see nothing unreasonable in their decision under the circumstances. It is not unusual for drivers to wait for the police to direct them to move their cars after an accident where there is no clear and immediate threat to life or property. The average driver might also be concerned about preserving the status quo so that the police may view the scene for possible evidentiary purposes, or the drivers might prefer to remove the vehicles in a safe manner under the guidance of the police.

Overall, the evidence here showed that traffic was light at that time of evening, that the four-lane intersection was lighted and regulated by a working traffic signal, and that there was only a slight curve 150 to 200 yards away which posed no immediate danger for other drivers. The officers arrived quickly after the accident to investigate and to take any desirable precautions. There is thus no evidence of a compelling and imminent danger to be averted by

194

defendant's conduct in driving the vehicle which itself could have posed an even greater danger to others since he was admittedly intoxicated. We are not persuaded that defendant's subjective concern regarding the potential danger equates with the imminent harm needed for the defense of necessity. (See, *e.g.*, *People v. White*, 78 Ill. App. 3d at 982.) Moreover, defendant had other reasonable alternatives: he could have turned on his flashers to warn others approaching the cars in the lighted intersection, or he could have asked one of the others to drive the vehicle off the road. He could also have waited a few brief moments for police assistance. The availability of other alternatives precludes a reasonable belief on defendant's part that driving a vehicle while under the influence of alcohol was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct. (See *People v. James*, 180 Ill. App. 3d at 466.) Defendant could not meet the second prong of the test for the instruction on necessity.

Finally, we also observe that, even in the absence of the instruction, defense counsel did argue vigorously to the jury, though in vain, that defendant's conduct was reasonable and prudent under the circumstances.

We conclude that the trial court correctly denied defendant's request for an instruction on the defense of necessity.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

COLWELL and PECCARELLI, JJ., concur.